**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| GARY STANHOPE | : | CIVIL CASE NO. |
| Plaintiff, | : | 3:24-CV-1342 (JCH) |
| | : | |
| | : | |
| v. | : | |
| | : | |
| LIVE NATION WORLDWIDE, INC. | : | |
| D/B/A XFINITY THEATRE | : | MAY 11, 2026 |
| Defendant. | : | |

**RULING ON MOTION FOR SUMMARY JUDGMENT (Doc. No. 54)**

**I.    INTRODUCTION**

The plaintiff, Gary Stanhope ("Mr. Stanhope"), brings this suit against Live Nation

Worldwide, Inc., d/b/a Xfinity Theatre ("Live Nation"), stemming from an assault he

suffered from a third party during a Luke Bryan concert held at the Xfinity Theatre in

Hartford, Connecticut on July 30, 2022.  Mr. Stanhope alleges that Live Nation

negligently failed to provide adequate security for its patrons, and that this failure was a

proximate cause of his injuries. See generally Complaint (Doc. No. 1).

Before the court is Live Nation's Motion for Summary Judgment.  See Live

Nation's Motion for Summary Judgment (Doc. No. 54); see also Live Nation's

Memorandum of Law in Support of Motion for Summary Judgment ("Def.'s Mem.") (Doc.

No. 55).  Mr. Stanhope opposed the Motion.  See Plaintiff's Objection to Defendant's

Motion for Summary Judgment (Doc. No. 65); see also Plaintiff's Memorandum of Law

in Support of Objection to Motion for Summary Judgment ("Pl.'s Opp'n") (Doc. No. 65-

1). Live Nation replied in further support of its Motion.  See Live Nation's Reply in

Further Support of Motion for Summary Judgment ("Reply") (Doc. No. 66).

For the reasons stated below, the court denies the Motion.

1

## II.    BACKGROUND[1]

Live Nation operated the Xfinity Theatre in Hartford, Connecticut, which hosted a Luke Bryan Concert on July 30, 2022.  See Plaintiff's 56(a)(2) Statement at ¶ 14 ("Pltf's 56(a)(2) Stat.") (Doc. No. 65-2).  Live Nation planned and prepared for the concert, including hosting numerous country music concerts.  Id. at ¶ 1.  Live Nation hosted a mock concert at the beginning of the concert season to acquaint security and staff with operations, layout, and expectations.  Id. at ¶ 2.  Live Nation hired 116 security personnel for the show.  Id. at ¶ 3.  Live Nation interfaced with Hartford Police frequently to ensure off duty officers were available to work.  Id. at ¶ 5.  Live Nation retained 16 uniformed Hartford Police Officers for this show, who were visibly present at the gates and near the site of the incident.  Id. at ¶ 6.  Live Nation issued an information sheet on the day of the show which describes expected attendance, demographics, weather, and other pertinent information.  Id. at ¶ 8.  Live Nation posted information to its website for patrons regarding security and safety.  Id. at ¶ 9.  Live Nation conducted security screening at the gates for weapons or dangerous contraband.  Id. at ¶ 10.  The security director, General Manager, and Assistant General Manager met with all security personnel before the concert commenced, to review assignments, deployments, and general expectations based on past experience and predicted turnout.  Id. at ¶ 11.  Live Nation adhered to the National Fire Protection Association standard regarding patron to crowd manager ratio of 250:1, including the relevant show.  Id. at ¶ 12.

Live Nation did not have a proper video surveillance system set up to monitor the large crowd.  See Plaintiff's Additional Material Facts at ¶ 2.  The security staff was not

---

[1] The following facts are taken from Mr. Stanhope's Local Rule 56(a)(2) Statement (Doc. No. 65-2).

deployed adequately.  Id. at ¶ 1.  Live Nation failed to conduct proper crowd management.  Id. at ¶ 4.

On July 30, 2022, Mr. Stanhope attended the Luke Bryan concert at the Xfinity Theatre.  See Pltf's 56(a)(2) Stat. at ¶ 14.  Mr. Stanhope does not recall much about the alleged incident or the evening.  Id. at ¶ 15.  He had attended prior concerts at the venue.  Id. at ¶ 16. Before entering the venue, Mr. Stanhope drank beers and smoked marijuana while tailgating in the parking lot.  Id. at ¶ 17.  He believes he had one additional drink inside the venue.  Id. at ¶ 18.  His blood alcohol level was recorded at 0.187 around 11:00 p.m. following the concert.  Id. at ¶ 20.

Mr. Stanhope and his wife and friends were watching the concert from an area called "the rail" between the lower tier general admission and the covered pavilion seating.  Id. at ¶ 22.  The incident occurred at approximately 10:30 p.m.  Id. at ¶  23. The following individuals attended the concert with Mr. Stanhope: (1) his wife, Alexandra Stanhope; (2) Mindy Semmler; (3) David Thibodeau; (4) Heather Kennett; (5) Steve Gazda; (6) Traci Hershman; and (7) Mark Pennell.  Id. at ¶ 26.  Mr. Stanhope does not remember anything after approaching the altercation.  Id. at ¶ 25.

Alexandra Stanhope did not witness her husband being struck.  Id. at ¶ 27.  She had never had problems at prior shows at the venue.  See Pltf's 56(a)(2) Stat. ¶ 29. She testified that, after the incident at a subsequent show, she was looking for security and found them very easily, near the rail.  Id. at ¶ 30.  She had no reason to dispute that around 115 security personnel or that 16 uniformed Hartford Police officers were on duty that night.  Id. at ¶ 31.

3

Steve Gazda did not witness the incident.  Id. at ¶ 34.  He saw security personnel coming and going through the walkway area generally during the Luke Bryan show before the incident occurred.  Id. at ¶ 35.  He testified that it "took a minute or two" for someone to come over after Mr. Stanhope was on the ground.  Id. at ¶ 36.

Traci Hershman did not witness Mr. Stanhope get hit.  Id. at ¶ 37.  Ms. Hershman testified that she did not see anything that caused her concern sufficient to seek out venue personnel, acknowledging venue personnel were at the gates no more than twenty-two feet away.  Id. at ¶ 39.  She also testified that she saw EMTs stationed nearby before the incident.  Id. at ¶ 40.

David Thibodeau did not witness Stanhope getting assaulted.  Id. at ¶ 41. He observed EMTs on the other side of the rail in the area where he was standing before the incident.  Id. at ¶ 42. He testified that he observed someone kick Mr. Stanhope after he was on the ground, but he admits this may have been inadvertent.  Id. at ¶ 43.

Heather Kennett did not witness the incident.  Id. at ¶ 44.  Ms. Kennett testified that she saw venue security at the main gates when entering the venue.  Id. at ¶ 45. She testified that seeing Hartford Police and security at the main gates was typical at shows at the venue.  Id. at ¶ 46.  Ms. Kennett saw nothing concerning prior to the incident, and recalled that security and paramedics responded within a couple of minutes afterward.  Id. at ¶¶ 48, 49.  She had never had safety concerns or experienced any problems at the Xfinity Theatre over approximately ten years of attending shows there.  Id. at ¶ 50.

Mindy Semmler did not witness the incident and did not see any fights prior to it. Id. at ¶ 52.

Mark Pennell is the only witness who saw Mr. Stanhope assaulted. Id. at ¶ 54. Mr. Pennell testified that he had no sense that Mr. Stanhope was about to be punched, and that the assault happened fast. Id. at ¶ 55. Mr. Pennell was aware that venue personnel were stationed on the other side of the rail near the incident. Id. at ¶ 56. Mr. Pennell also testified there was no security present during the two-to-three minutes in which the man was throwing the woman around. Id.

Mr. Pennell testified that he saw Hartford Police speaking to the assailant within one to three minutes after Mr. Stanhope was struck down to the concrete. Id. at ¶ 57.

## III.    LEGAL STANDARD

A motion for summary judgment may be granted only when the moving party can establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Wright v. N.Y. State Dep't of Corr., 831 F.3d 64, 71-72 (2d Cir. 2016). If the moving party satisfies this burden, the nonmoving party must set forth specific facts demonstrating that there is indeed "a genuine issue for trial." See Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). A genuine issue of fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." See Cross Com. Media, Inc. v. Collective, Inc., 841 F.3d 155, 162 (2d Cir. 2016). Unsupported allegations do not create a material issue of fact and cannot overcome a properly supported motion for summary judgment. See Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000). In assessing the record to determine whether there are disputed issues of material fact, the trial court must "resolve all ambiguities and draw all inferences in favor of the party against whom summary

judgment is sought." See LaFond v. Gen. Physics Servs. Corp., 50 F.3d 165, 175 (2d Cir. 1995).

## IV.    DISCUSSION

### A.    Expert Testimony is not Required

As a preliminary matter, Live Nation argues that the standard of care for a large concert amphitheater requires an expert whose testimony is admissible and, without such testimony, Mr. Stanhope's claims fail as a matter of law. See Def.'s Mem. at 13-14. The argument is moot as the court denies the Motion to Preclude Mr. Kolins' Testimony (Doc. No. 58), therefore Mr. Stanhope does have an expert to testify. See Ruling on Motion to Preclude Mr. Kolins' Testimony (Doc. No. 68)

As an aside, expert testimony in a negligence action "is required only when the question involved goes beyond the field of the ordinary knowledge and experience of the trier of fact." See Brye v. State, 147 Conn. App. 173, 182 (2013). The facts of this case are within a jury's ability to understand. See, e.g., State v. Kenneth B., 223 Conn. App. 270, 277, cert. denied, 348 Conn. 952, 308 A.3d 1038 (2024) (holding that a reasonable jury could conclude a victim suffered serious physical injury from a physical assault and loss of consciousness). The key facts involve a prolonged altercation with two physical assaults, with multiple witnesses, and the plaintiff left on the ground insensible and bleeding. A reasonable jury does not need to be a physical security expert to determine whether the Live Nation breached its duty and security should have responded to a prolonged assault in a high traffic area.

### B.    Mr. Stanhope's Negligence Claim against Live Nation

A cause of action in negligence is comprised of four elements: duty; breach of that duty; causation; and actual injury. See Ruiz v. Victory Props., LLC, 315 Conn. 320,

328, 107 A.3d 381, 387 (2015).  There is a dispute only as to whether Live Nation breached its duty to Mr. Stanhope regarding security precautions.  See Def.'s Mem. at 14.

Mr. Stanhope asserts a single negligence claim.  See generally Complaint, at Count I.  "The existence of a duty of care is a necessary element of a negligence claim."  See Great N. Ins. Co. v. RLJ Plumbing & Heating, Inc., No. 3:04-CV-899(JCH), 2006 WL 1526066, at *3 (D. Conn. May 25, 2006) (citing LaFlamme v. Callessio, 261 Conn. 247, 251, 802 A.2d 63 (2002)).  "The existence of a duty of care is a question of law and only if such a duty is found to exist does the trier of fact then determine whether the defendant violated that duty in the particular situation at hand."  Id.  (citing Gerber Trade Finance, Inc. v. Davis, Sita & Co., P.A., 128 F.Supp.2d 86, 95 (D. Conn. 2001).  "If a court determines, as a matter of law, that a defendant owes no duty to a plaintiff, the plaintiff cannot recover in negligence from the defendant." Id.  Live Nation does not dispute it owed a duty but argues that Mr. Stanhope cannot establish that Live Nation breached its duty with respect to the security precautions at the concert.  See Def.'s Mem. at 14.  Live Nation's duty of care is determined by whether, given what the concerned venue knew or should have known, it could reasonably foresee its conduct was likely to result in harm of the same general nature as what actually occurred.  See Doe v. Saint Francis Hosp. & Med. Ctr., 309 Conn. 146, 169 (2013)

Genuine issues of material fact exist as to whether Live Nation was breached its duty to Mr. Stanhope.  Witness testimony includes evidence of other fights at the venue.  See Exhibit 11, pg. 34; Exhibit 7, pg. 11, 7-17.  Mr. Pennell, the eyewitness to the assault, observed a woman being swung around for a few minutes, and there was no

security around.  See Pltf's 56(a)(2) Stat. at ¶¶ 54,56.  Ms. Hershman testified to an aggressive and rowdy crowd as well as a few minutes of delayed response from the EMT or security.  Id. at ¶¶ 39, 40.  A reasonable jury could credit this and other testimony to determine that Live Nation breached its duty of care to Mr. Stanhope and thus was negligent in its physical security precautions.  Therefore, the court denies Live Nation's Motion for Summary Judgment regarding Negligence.

      C.      Superseding Criminal Conduct

Live Nation further argues that, even if Mr. Stanhope could establish a negligence claim, it fails for the additional and independent reason of being barred by the superseding criminal conduct doctrine.  See Def.'s Mem. at 22.  Live Nation relies upon Snell v. Norwalk Yellow Cab, Inc., 332 Conn. 720 (2019) and Allen v. Shoppes At Buckland Hills LLC, 206 Conn. App. 284, 295 (2021), to argue that these cases apply, and therefore the superseding criminal conduct doctrine applies.  Id. at 23.

Mr. Stanhope argues that the superseding criminal conduct, the assault, does not relieve Live Nation of its duty to protect Mr. Stanhope.  See Pltf.'s Opp'n at 13-14.  Furthermore, Mr. Stanhope argues that the Snell case, cited by Live Nation, is in contrast with the present case, where Live Nation was the host of a concert event.  Id. at 14.  In Snell, a cab driver (the defendant) left his keys in a car in a dangerous neighborhood, two teens stole the car and went on a joyride while intoxicated, taking turns to operate the vehicle, hit another vehicle and fled the accident, then drove onto a sidewalk striking the plaintiff.  Id.  Mr. Stanhope argues that, in contrast to Snell, Live Nation held a concert, served alcohol, and hosted a genre where incidents are likely to occur.  Id.

It is well settled that a negligence action consists of four elements: duty, breach, causation, and actual injury. See Murdock v. Croughwell, 268 Conn. 559, 566, 848 A.2d 363 (2004). For the purposes of this argument of superseding claim conduct, Live Nation does not dispute it owed a duty of care to Mr. Stanhope, that the duty was breached, or that Mr. Stanhope was injured. See generally Def.'s Mem. at 22-25. The defendant argues that the unknown assailant's intentional criminal conduct severs the link with any of Live Nation's alleged negligence. Id. at 24.

The law is clear on a defendant's responsibility.

> As a general matter, a defendant is not responsible for anticipating the intentional misconduct of a third party. . . unless the defendant knows or has reason to know of the third party's criminal propensity. The criminal misconduct of a third party may be foreseeable under the facts of a particular case, however, without a showing that the defendant had such actual or constructive knowledge of the third party's criminal propensity. As this and many other courts have recognized, when a defendant's conduct creates or increases the risk of a particular harm and is a substantial factor in causing that harm, or when the defendant otherwise has a legally cognizable duty to aid or protect another person, the fact that the harm is brought about by the actions of a third party does not relieve the defendant of liability, even though the third party's conduct is criminal, if the harm that occurred is within the scope of the risk created by the defendant's conduct or reasonably could have been anticipated in light of the defendant's duty to protect.

Doe v. Saint Francis Hosp. & Med. Ctr., 309 Conn. 146, 172 (2013). Live Nation had a duty to protect Mr. Stanhope. Mr. Stanhope and various witnesses assert that there was a rowdy crowd, a lack of security enforcement, a prolonged fight, and a delayed response from the EMT once Mr. Stanhope was assaulted. See Pltf's 56(a)(2) Stat. at ¶¶ 36, 39, 40, 54, 56. A reasonable juror could find that it was foreseeable that Mr. Stanhope would be injured under these circumstances. Therefore, the court denies summary judgment based on superseding cause.

9

**V.    CONCLUSION**

For the reasons stated above, the court denies Live Nation's Motion for Summary Judgment (Doc. No. 54).


**SO ORDERED.**

Dated at New Haven, Connecticut this 11th day of May 2026.


          /s/ Janet C. Hall
          Janet C. Hall
          United States District Judge